UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| SERGIO A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1739-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## **INTRODUCTION**

Plaintiff Sergio A. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 19).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 15. Plaintiff also filed a reply brief. *See* ECF No. 18. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **GRANTED**.

## **BACKGROUND**

Plaintiff protectively filed an application for DIB on March 6, 2018, alleging disability beginning March 2, 2016 (the disability onset date), due to herniated lumbar discs and bone spurs. Transcript ("Tr.") 71, 145-46, 166. Plaintiff's claim was denied initially on May 16, 2018 (Tr. 77-88), after which he requested an administrative hearing (Tr. 89-90). On January 7, 2020,

Administrative Law Judge Timothy Belford (the "ALJ") held a video hearing from Lawrence, Massachusetts. Tr. 20, 35-59. Plaintiff appeared and testified in Buffalo, New York, and was represented by Sarah A. Frederick, an attorney. Tr. 20. Elaine G. Cogliano, an impartial vocational expert ("VE"), also appeared and testified via telephone. Tr. 20, 54-58.

The ALJ issued an unfavorable decision on February 4, 2020, finding that Plaintiff was not disabled. Tr. 20-31. On September 29, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's February 4, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 4, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since March 2, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] that does not require more than four hours total of combined standing and walking. The claimant is limited to no more than occasional climbing, stooping, crawling, crouching and kneeling.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 4, 1982 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 2, 2016, through the date of this decision (20 CFR 404.1520(g)).

Tr. 20-31.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on March 6, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 31.

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ failed to evaluate the favorable opinion and functional capacity evaluation of consulting physical therapist Mark Howard, PT, DPT, OCS ("Mr. Howard"); improperly relied on a stale opinion from state agency reviewing physiatrist of J. Lawrence ("Dr. Lawrence"); and failed to develop the record with respect to the sit/stand option opined by Mr. Howard. *See* ECF No. 12-1 at 10-15. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's right shoulder condition was not a severe impairment. *See id*. at 15-17. Finally, Plaintiff argues that the ALJ improperly substituted his lay opinion over the opinion of a doctor. *See id*. at 17-25.

In response, the Commissioner argues as follows: (1) the ALJ properly assessed the opinions of Dr. Lawrence and Mr. Howard; (2) the ALJ properly determined that Plaintiff's right shoulder condition was not a severe impairment, and Plaintiff failed to show that his shoulder condition significantly limited his ability to do basic work activity; and (3) there is no merit to Plaintiff's contention that the ALJ's "substituted his own 'medical' judgment for that of any physician regarding [Plaintiff's] physical limitations." *See* ECF No. 15-1 at 15-23.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ's decision was supported by substantial evidence, including the medical opinion evidence, Plaintiff's generally unremarkable physical examination findings, and Plaintiff's activities of daily living. Accordingly, the ALJ properly concluded that Plaintiff retained the RFC to perform work that exists in significant numbers in the national economy and, thus, he was not disabled.

Family physician Angela Barnes, D.O. ("Dr. Barnes"), examined Plaintiff on January 6, 2016, for complaints of right shoulder pain. Tr. 262-63. Upon examination, Dr. Barnes observed that Plaintiff's right arm exhibited full ranges of motion except that he could not reach behind his back. Tr. 262. She assessed "likely rotator cuff tendinopathy vs. tear" and recommended physical therapy. Tr. 263.

Neurologist Patrick J. Hughes, M.D. ("Dr. Hughes"), conducted an independent medical examination ("IME"), on April 18, 2016. Tr. 382-86. Plaintiff's medical history indicated that he had lumbar surgery in 2013 performed by Dr. Leonardo and had suffered a workplace injury on August 2, 2015. Tr. 382-83. Plaintiff told Dr. Hughes that he could lift twenty pounds, as well as drive for thirty minutes at a time. Tr. 382. Upon examination, Plaintiff was able to walk and was able to get on and off the examination table without assistance; his cranial nerves were intact; motor strength was normal throughout all of the major muscle groups in the upper and lower extremities; and straight leg raise testing was positive on the right. Tr. 383. Dr. Hughes noted hyperalgesia extending from Plaintiff's feet to his calves and was unable to elicit reflexes. *Id*. Range of motion in the lumbar spine was 30 degrees of forward flexion, extension was 10 degrees

and bilateral lateral flexion was 10 degrees. *Id*. There was no sign of spasm in the paraspinal muscles in the lower spine. *Id*.

Based on his exam findings and review of the records, Dr. Hughes stated that Plaintiff had low-back and bilateral leg pain causally related to his work injury and stated that a lumbar fusion surgery of S1-L5 was warranted. Tr. 385. He stated that Plaintiff was limited to light duty that does not involve more than thirty minutes of continuous sitting, standing, or walking as well as lifting more than ten pounds.

Plaintiff underwent another IME on November 1, 2016, with orthopedic surgeon Joshua Auerbach, M.D. ("Dr. Auerbach"). Tr. 396-401. Dr. Auerbach noted that Plaintiff made a "really nice recovery" from his L5-S1 anterior lumbar interbody fusion ("ALIF") surgery, and his range of motion showed only mild restrictions with no leg pain and mild back pain. Tr. 399. Dr. Auerbach also noted that Plaintiff's household activities included doing light housework, cooking, cleaning, and shopping. Dr. Auerbach assessed that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Tr. 399.

Neurosurgeon John Pollina, M.D. ("Dr. Pollina"), conducted a post-operative follow-up examination on December 14, 2016. Tr. 273-74. Plaintiff reported "excellent progress" since his last visit and had "no significant pain." Tr. 273. Upon examination, Dr. Pollina observed that Plaintiff's gait and station were normal, and he demonstrated full muscle strength and normal reflexes and sensations throughout his legs. *Id*. He denied tenderness to palpitation of the lumbar spine and/or paraspinal muscles, and straight leg raising tests were negative. Tr. 273. X-rays of Plaintiff's lumbar spine revealed stable placement of instrumentation at the L5-S1 level with evidence of bony bridging anteriorly at the operative site. Tr. 274, 357, 358, 359. Dr. Pollina noted that Plaintiff "has done excellent postoperatively and is happy with the results of surgery." Tr. 274.

Plaintiff returned to Dr. Auerbach for a follow-up examination on August 28, 2017. Tr. 392-95. Plaintiff reported that his typical day consisted of doing housework, cooking, cleaning, and shopping, as well as taking care of his two small children and looking for work. Tr. 392. Plaintiff also reported that he was attending physical therapy, doing home exercises, going to a gym, and using a swimming pool. Tr. 393. Dr. Auerbach assessed that Plaintiff could perform medium exertional work with lifting fifty pounds occasionally and twenty pounds frequently. Tr. 393, 394.

Orthopedic surgeon Zair Fishkin, M.D., Ph.D. ("Dr. Fishkin"), examined Plaintiff for complaints of lower back pain on February 28, 2018. Tr. 676-80. Upon physical examination, Dr. Fishkin observed that Plaintiff's gait was normal (Tr. 677), and he demonstrated full muscle strength, as well as normal reflexes and sensations throughout his arms and legs (Tr. 678).

State agency medical consultant Dr. Lawrence reviewed the evidence of record on May 15, 2018 and assessed that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; during the course of an eight-hour workday, he could sit as well as stand and/or walk for about six hours each; and he could no more than frequently climb ramps/stairs, climb ladders/ropes/scaffolds, and/or stoop. Tr. 66. Dr. Lawrence assessed no limitations in balancing, kneeling, crouching, nor crawling and no manipulative limitations. Tr. 66-67.

Family physician Tariq A. Sheikh, M.D. ("Dr. Sheikh"), examined Plaintiff on August 17, 2018 and May 3, 2019. Tr. 579-89. On August 17, 2018, Plaintiff complained of non-specific joint pain. Tr. 587. Upon examination, Dr. Sheikh observed that Plaintiff was 5'10" tall and weighed 225 pounds. Tr. 588. Plaintiff appeared healthy and well developed; he walked with a normal gait; he demonstrated full muscle strength throughout his arms and legs; and he denied spinal tenderness. *Id*. Dr. Sheikh assessed polyarthritis, unspecified; and obesity. *Id*. On May 3, 2019,

Plaintiff complained of right shoulder pain. Tr. 581. Dr. Sheikh observed that Plaintiff's physical examination findings were unchanged since his August 2018 examination. Tr. 582, 584, 588. Dr. Sheikh also noted that x-rays of Plaintiff's right shoulder taken on June 6, 2019 were unremarkable except for a slight spur formation at the acromioclavicular joint. Tr. 579.

Mr. Howard performed a functional capacity evaluation on June 20, 2019. Tr. 550-58. Plaintiff demonstrated the ability to lift twenty pounds occasionally and ten pounds frequently. Tr. 550. Plaintiff reported that he could sit for thirty minutes at a time and walk for forty-five minutes continuously. Tr. 550, 557. Mr. Howard observed that Plaintiff demonstrated full muscle strength and full ranges of motion throughout his arms. Tr. 555. Plaintiff also demonstrated the ability to stand for thirty-five minutes at a time. Tr. 557. He further demonstrated the ability to tandem balance, crouch, kneel, and reach without difficulty, but was unable to stoop due to back pain. Tr. 558. Mr. Howard assessed that Plaintiff could perform light work and opined that Plaintiff was capable of occasional sitting (2 hours), frequent lifting, standing, and walking (6 hours), and occasional carrying, frequent pushing, pulling, but never stooping, climbing, or crawling, occasional handling and fingering, and frequent reaching. Tr. 550. Plaintiff drove 28 minutes to the appointment and sat for 30 minutes to complete paperwork with periodic breaks to stand. Tr. 557. Plaintiff reported his sitting tolerance was limited to 25 minutes before he requires a positional change. *Id*. Mr. Howard opined that Plaintiff could not tolerate "extended sitting" and "demonstrated the ability to stand for 35 minutes." *Id*.

Orthopedic surgeon Anthony Cicoria, M.D. ("Dr. Cicoria"), conducted an IME on August 14, 2019, and assessed that Plaintiff could lift thirty pounds. Tr. 568. He opined that Plaintiff should avoid frequent bending and twisting, prolonged sitting, and/or prolonged standing, and he should be allowed to change positions as needed. Tr. 568.

Plaintiff returned to Dr. Sheikh for a follow-up examination on September 20, 2019. Tr. 576-78. Upon examination, Plaintiff weighed 252 pounds and appeared healthy and well developed. Tr. 577. Plaintiff walked with a normal gait; demonstrated full muscle strength throughout his arms; and denied spinal tenderness. *Id*. Dr. Sheikh assessed right shoulder pain and obesity. *Id*.

Plaintiff returned to Dr. Fishkin for a follow-up examination on October 14, 2019. Tr. 590-94. Plaintiff complained of continued lower back pain. Tr. 590. Dr. Fishkin observed that a June 6, 2019 MRI of Plaintiff's lumbar spine revealed no residual stenosis at the L4-L5 and L5-S1 levels, nor any abnormalities at the adjacent levels. Tr. 590-91. Dr. Fishkin diagnosed arthrodesis at the L5-S1 level and transforaminal lumbar interbody fusion ("TLIF") at the L4-S1 levels. Tr. 592.

Plaintiff first argues that the ALJ failed to properly assess the opinions of Dr. Lawrence and Mr. Howard, and therefore, his RFC finding was not supported by substantial evidence. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015)

("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new

regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on March 6, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a

medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ properly based his determination that Plaintiff retained the RFC to perform a range of light work on the assessments of Drs. Lawrence, Dr. Auerbach, and Mr. Howard; the generally unremarkable physical examination findings of Drs. Pollina, Hughes, Sheikh, and Fishkin; and Plaintiff's reported activities of daily living. Tr. 23-29. Furthermore, each of the physicians who assessed Plaintiff's ability to do work-related activities assessed that he could do light work.

As noted above, state agency medical consultant Dr. Lawrence assessed that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; sit, stand, and/or walk for about six hours out of an eight-hour workday; and, had no limitations in balancing, kneeling, crouching, nor crawling and no manipulative limitations. Tr. 66-67. As the ALJ noted, Dr. Lawrence supported his opinion with specific citations to the evidence of record and stated his opinion as to Plaintiff's capabilities in work-related functional terms. Tr. 29. Furthermore, state agency consultants, such as Dr. Lawrence, are highly qualified experts in Social Security disability evaluations, and an ALJ is entitled to rely on their opinions. *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015); *see also* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). Furthermore, Dr. Auerbach assessed that Plaintiff could perform medium work with lifting no more than fifty pounds occasionally and twenty pounds frequently (Tr. 393, 394), and Mr. Howard assessed that Plaintiff could perform light work (Tr. 550).

Plaintiff's contention that Dr. Lawrence's opinion was "stale" is unpersuasive. *See* ECF No. 12-1 at 20-23. First, the ALJ acknowledged that the medical evidence submitted after Dr. Lawrence made his assessment established greater limitations on Plaintiff's ability to stand and walk than Dr.

Lawrence assessed. Tr. 29. However, the ALJ also noted that while Plaintiff's ability to stand and walk had deteriorated since Dr. Lawrence's assessment that Plaintiff could stand/walk for six hours out of an eight-hour workday, subsequent evidence showed that Plaintiff could stand/walk for four hours of an eight-hour workday, which is consistent with the limitation the ALJ assessed in his RFC finding. Tr. 28, 29. *See Hernandez v. Colvin*, 15-CV-6764, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)) ("[A] medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]."). For instance, Dr. Sheikh observed that Plaintiff walked with a normal gait and demonstrated full muscle strength throughout his arms and legs. Tr. 577, 582, 584, 588. Plaintiff told Mr. Howard that he could stand for thirty-five minutes at a time as well as walk for forty-five minutes continuously. Tr. 557. Moreover, subsequent substantial evidence supports Dr. Lawrence's assessment that Plaintiff could lift/carry twenty pounds. Tr. 66. Plaintiff testified that he could lift thirty pounds. Tr. 44. Likewise, Dr. Cicoria assessed that Plaintiff could lift thirty pounds. Tr. 568. Because substantial evidence supports the ALJ's RFC determination that Plaintiff could stand/walk for four hours of an eight-hour workday, as well as lift/carry twenty pounds, Plaintiff's argument fails. Tr. 28.

Plaintiff's contention that the ALJ erred when he did not address Mr. Howard's assessment that Plaintiff had significant limitations in handling, fingering, and stooping likewise fails. *See* ECF No. 12-1 at 10-15 (citing Tr. 550). Although an ALJ must consider all relevant evidence, this does not mean that the ALJ must specifically address each piece of evidence in his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record must be reconciled by the ALJ or the [Commissioner] . . ."). "It is enough that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision," *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981), and that "the crucial factors in any

determination [are] set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587. *See Mongeur*, 722 F.2d at 1040 ("when the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *see also Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Indeed, even if the ALJ was not as explicit in his reasoning on this issue as possible, an ALJ does not have to state on the record every reason justifying a decision, nor is an ALJ required to discuss every piece of evidence submitted."); *Gladney v. Astrue*, No. 12-cv-6423P, 2014 WL 3557997, *10 (W.D.N.Y. 2014) (even where ALJ could have more fully articulated the basis for his conclusion, any such failure was harmless, where it was "possible to glean the ALJ's rationale" from a review of the entire decision). Reviewing the entire decision in this case, the Court is able to glean the ALJ's rationale as to the limitations assessed.

Moreover, there is no requirement that the ALJ accept every limitation in a medical source's opinion. *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (holding that the ALJ properly declined to credit certain conclusions in a medical source's opinion that were inconsistent with other evidence of record). Here, Mr. Howard's assessment was inconsistent with other substantial evidence of record as well as Plaintiff's admission that he worked as a painter which would presumably require frequent stooping, handling and fingering. *See* 20 C.F.R. § 404.1527(c)(4) ("[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give that medical opinion."). Notably, Dr. Lawrence assessed that Plaintiff had no manipulative limitations. Tr. 66, 67. Also, on his activities of daily living questionnaire, Plaintiff reported that he cooked meals, cleaned house, and folded laundry. Tr. 189-93. Plaintiff also testified that he could drive a car, as well as sweep and mop floors. Tr. 44, 46-47, 52, 53-54. *See Wavercak v. Astrue*, 420 F. App'x. 91, 94 (2d Cir. 2011)

(ALJ is not required to defer to a medical source's assessment if the source's assessment conflicted with plaintiff's description of his daily activities). Significantly, on his activities of daily living questionnaire, Plaintiff reported that he had no difficulty using his hands. Tr. 194. Accordingly, substantial evidence demonstrates that Plaintiff did not have significant handling, fingering, and/or stooping limitations. Plaintiff's argument therefore fails.

Next, Plaintiff argues that the ALJ erred when he determined that Plaintiff's right shoulder condition was not a severe impairment. *See* ECF No. 12-1 at 15-17. At the second step of the sequential evaluation, an ALJ considers whether the claimant has at least one severe impairment or combination of impairments that meets the twelve-month durational requirement for establishing disability. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1522(a) (defining "non-severe" impairments). If the claimant does not have any severe impairments, then the claimant is not disabled, and the sequential evaluation ends. *Id*. However, if the claimant has at least one severe impairment or combination of impairments, then the evaluation continues, and the ALJ considers *all* impairments and symptoms when evaluating RFC. *See* 20 C.F.R. § 404.1529, 404.1545(a)(2).

Furthermore, it is Plaintiff's burden to demonstrate that he has a severe impairment. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). The mere presence of an impairment, or that a person has been diagnosed and/or treated for an impairment is not, by itself, sufficient to render a condition severe. *Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013); *see Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 ((N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)) ("The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe."). Instead, a

claimant must demonstrate an impairment that "significantly limits [his] physical or mental ability to perform basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

Here, Plaintiff's medical sources neither observed nor assessed any right shoulder condition that significantly limited his ability to perform basic work activities. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner "is entitled to rely not only on what the record says, but also on what it does not say[.]") (citing *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981))); *see also Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995). Notably, Dr. Lawrence assessed that Plaintiff had no manipulative (*e.g.*, reaching) limitations. Tr. 66, 67. Dr. Barnes observed that Plaintiff's right arm exhibited full ranges of motion except that he could not reach behind his back. Tr. 262. Mr. Howard observed that Plaintiff demonstrated full ranges of motion throughout his arms (Tr. 555) and assessed that Plaintiff had no reaching restrictions (Tr. 558). In fact, Plaintiff told Mr. Howard, and subsequently testified, that he worked as a painter throughout the summer of 2019. Tr. 40, 557. Nor did the objective evidence show any right shoulder condition that would significantly limit Plaintiff's ability to do basic work activities. For instance, x-rays of Plaintiff's right shoulder were unremarkable except for a slight spur formation at the acromioclavicular joint. Tr. 579. Because Plaintiff has failed to show that his right shoulder condition significantly limited his ability to do basic work activity, his contention fails.

In his final point of error, Plaintiff argues that the RFC lacked evidentiary support from a competent medical opinion, and therefore, the ALJ substituted his own "medical" judgment regarding Plaintiff's physical limitations. *See* ECF No. 12-1 at 17. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a

whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Furthermore, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir.

2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

As discussed above, the ALJ did not rely solely on the medical opinion evidence in reaching his RFC finding. In addition to properly evaluating the opinion evidence, the record here reflects that the ALJ also relied on other objective medical evidence in the record, as well as Plaintiff's reported activities of daily living. For example, the generally unremarkable physical examination findings of Drs. Pollina, Hughes, Sheikh, and Fishkin supported the ALJ's RFC determination. Throughout the relevant period, Drs. Pollina, Hughes, Sheikh, and Fishkin consistently observed that Plaintiff walked with a normal gait and demonstrated full muscle strength throughout his arms and legs. Tr. 273, 383, 582, 577, 588, 678.

Plaintiff's activities of daily living also supported the ALJ's RFC determination. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

In April 2019, Plaintiff completed a questionnaire regarding his activities of daily living. Tr. 189-98. Plaintiff reported that he took care of his infant daughters, took care of his personal hygiene and grooming needs, cooked meals, house cleaned, folded laundry, drove a car, went out for walks, shopped in stores, read, watched television, and socialized. Tr. 189-93. Plaintiff further

reported that he could lift twenty pounds. Tr. 194. Furthermore, at his January 7, 2020 administrative hearing, Plaintiff testified that he could lift thirty pounds, drive a car, take care of his two young daughters, wash laundry, sweep and mop floors, and walk for thirty minutes at a time. Tr. 44, 46-47, 52, 53-54. Likewise, Plaintiff told Dr. Auerbach that his typical day consisted of doing housework, cooking, cleaning, and shopping; taking care of his two small children; looking for a job; and attending physical therapy, doing home exercises, and going to a gym and swimming. Tr. 392, 393. Also, Plaintiff told Dr. Hughes that he could lift twenty pounds as well as drive for thirty minutes at a time. Tr. 382. There is abundant evidence to support the ALJ's RFC.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered entire record, including the treatment reports, the medical opinions, and Plaintiff's mostly routine and

conservative care, as well as Plaintiff's activities of daily living, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE